UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

| | | |
|---|---|---|
| RONALD WISE, | : | Case No. 1:14-cv-709 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED;
AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and

therefore unentitled to supplemental security income ("SSI").  (*See* Administrative

Transcript at Doc. 4, Ex. 2 ("Tr") (Tr. 23-37) (ALJ's decision)).

**I.**

Plaintiff filed for SSI benefits on May 4, 2011, alleging disability beginning on

March 21, 2009.  (Tr. 23).  Plaintiff alleges disability due to his low back, shoulders,

hepatitis C, depression, and hearing voices.  (Doc. 6 at 1).  The claim was denied initially

and upon reconsideration.  (*Id*.)  Thereafter, Plaintiff filed a written request for hearing on

February 17, 2012.  (*Id*.)  Plaintiff appeared with counsel and testified at a hearing held

on July 2, 2013.  (*Id*.)  An ALJ issued an unfavorable decision on August 22, 2013.  (Tr.

20-37).  The Appeals Council denied Plaintiff's request for review (Tr. 1-7), giving this

Court jurisdiction to review the ALJ's decision under 42 U.S.C. Section 1383(c)(3).

In deciding Plaintiff's claim, the ALJ considered the findings from the prior ALJ's

decision dated March 25, 2009.  (Tr. 23, 30, 34, 115-28).  The ALJ noted that absent new

and material evidence establishing changed circumstances, he was bound by the findings

of the prior ALJ.   (Tr. 23, 30).  *See also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d

837 (6th Cir. 1997).  The ALJ found that the record did not contain new or material

evidence that warranted a change in Plaintiff's residual functional capacity from the prior

ALJ's decision.[1]  (Tr. 23, 30).  The current ALJ's RFC finding, which restricted Plaintiff

to a limited range of medium work, is identical to the prior ALJ's assessment, which

restricted Plaintiff to the same level of work.  (Tr. 29, 122).  Given that Plaintiff's RFC

had not changed, the ALJ properly concluded that Plaintiff could perform other work that

existed in significant numbers in the national economy and therefore was not disabled.

(Tr. 35-37, 127-128).

Plaintiff was 61 years old on the date of the administrative hearing.  (Tr. 47).

Plaintiff completed tenth grade and completed some vocational training at CNA.  (Tr.

48).  Plaintiff has past relevant work experience as a cook .[2]  (Tr. 51).

---

[1]  RFC is defined as the most a claimant can still do despite his or her limitations.  20 C.F.R.
§ 404.1545(a).

[2]  Past relevant work experience is defined as work that the claimant has "done within the last 15 years,
[that] lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity."
20 C.F.R. § 416.965(a).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.   The claimant has not engaged in substantial gainful activity since May 4, 2001, the application date (20 CFR 416.971 *et seq*.).

2.   The claimant has the following severe impairments: hepatitis C; a mood disorder; a personality disorder, not otherwise specified; and borderline intellectual functioning (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 4165.926).

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c).  Specifically, the claimant is able to perform work activity except as follows:  He can lift/carry up to fifty pounds occasionally and twenty-five pounds frequently.  He can stand and/or walk for six hours in an eight-hour workday and can sit for six hours in an eight-hour workday.  The claimant can occasionally stop, kneel, crouch, crawl and climb ramps/stairs; he should never climb ladders, ropes, scaffolds or work at unprotected heights.  The claimant is able to remember and carry out only short and simple instructions and make only simple work-related decisions.  He cannot interact with the general public and cannot interact with coworkers or supervisors more than occasionally.  His job should not require more than ordinary and routine changes in work setting or duties.  His job should not require reading or writing skills above the fourth grade level and should not require more than simple math.

5.   The claimant is unable to perform his past relevant work (20 CFR 416.965).

6.   The claimant was born on August 18, 1951 and was 59 years old, which is defined as an individual closely approaching retirement age, on the date the application was filed (20 CFR 416.963).

7.   The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since May 4, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 25- 37).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations, and was therefore not entitled to SSI.  (Tr. 37).

On appeal, Plaintiff alleges that the ALJ: (1) improperly weighed the medical source opinions; (2) improperly concluded that he was not credible; and (3) improperly relied on the vocational expert's testimony.  The Court will address each error in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that

4

finding must be affirmed, even if substantial evidence also exists in the record upon

which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion. The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts. If the Commissioner's decision is
> supported by substantial evidence, a reviewing court must
> affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is

entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present

sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

The record reflects that:

Dr. Swedberg did a one-time physical exam for the Commissioner in September

2011 (515-521), finding that Plaintiff had difficulty forward bending to 60 degrees and

diminished flexion on exam. (Tr. 516). He also found that Plaintiff had problems raising

his arms above the horizontal level. (Tr. 516). He concluded that Plaintiff had low back

pain (Tr. 517) and could do at least a "mild to moderate" amount of standing, walking,

sitting, and lifting of heavy objections. (Tr. 517). The ALJ gave this "significant weight." (Tr. 33).

Plaintiff came under the treatment of Dr. Robinson in January 2013 and continued with his treatment through the date of the ALJ's denial decision. (Tr. 712-719). Dr. Robinson treated the low back pain. His residual functional capacity form (Tr. 708-711) in June 2013 did not allow for any work.

Plaintiff has also been treated at CCHB for depression and hearing voices. (Tr. 522-589, 599-665). Brenda McKinstry is his treating nurse practitioner and prescribes medicines for him. (Tr. 71). She completed a form with his work-related limitations, which would not allow Plaintiff to "sustain" work for 40 hours a week. (Tr. 699-705). *Gayheart v. Comm'r*, 710 F.3d 365, 377 (6th Cir. 2013).

Dr. Schmidtgoessling did a one-time psychological evaluation in September 2011 (Tr. 506-514), noting a slow work pace (Tr. 511-12), low energy, and depression (Tr. 510). She felt that his slow pace could affect his attention and concentration working (Tr. 513), and his intelligence level could also affect his ability to deal with stress on a job.

Plaintiff is disabled if limited to light work under grid Rule 202.01, Appendix 2, 20 CFR Part 416. In denying benefits, the ALJ found that Plaintiff could do medium unskilled work as a packager. (Tr. 36).

**B.**

First, Plaintiff alleges that the ALJ improperly weighed the medical source opinions.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

> One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

(*Id.*) "The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Id.* "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.*

The Commissioner's regulations establish a hierarchy of acceptable medical source opinions. The hierarchy begins at the top with treating physicians or

psychologists.  20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d).  In general, more weight is given to examining medical source opinions than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1).  Still, non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions.

"The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.  For example, the opinions of the physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations of the opinions, than are required to treating sources.  SSR 96-6p.  "The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

### 1. *Physical Impairments*

In September 2011, Dr. Swedberg conducted a consultative exam at the request of the state agency.  (Tr. 515-517).  Plaintiff told Dr. Swedberg that he could only sit for five minutes due to lower back pain (Tr. 515); however, he later admitted that he had no difficulties sitting (Tr. 59).  Dr. Swedberg noted Plaintiff had never undergone surgery for his lower back, never been told he needed surgery, and never had cortisone injections.

(Tr. 515). Plaintiff did not know if he had any x-rays or MRIs of his lower back. (*Id.*) On examination, Dr. Swedberg noted that Plaintiff had a normal gait, was comfortable in the sitting and supine position, and had normal range of motion in his cervical spine and normal muscle and grasp strength. (Tr. 516). While Plaintiff reported difficulty bending at the waist, his straight leg raising test was normal and he had no tenderness on palpation in his hips and no muscle weakness. (Tr. 516-517). Based on the findings from the examination, Dr. Swedberg opined that Plaintiff "appears capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 517). He also noted that Plaintiff might have some difficulty reaching overhead. (*Id.*)

The ALJ considered Dr. Swedberg's opinion, determined that it was consistent with Plaintiff's treatment records and Dr. Swedberg's exam, and properly granted it significant weight. (Tr. 33-34). The ALJ found that while Dr. Swedberg's opinion did not provide a specific level of exertion that Plaintiff could perform, it "reasonably allows for the range of medium work." (Tr. 34). Therefore, Dr. Swedberg's exam and opinion provides substantial evidence supporting Plaintiff's RFC. 20 CFR § 416.927(c)(3)(4).

Plaintiff argues that the ALJ improperly evaluated Dr. Swedberg's opinion because the ALJ failed to acknowledge that the opinion limited Plaintiff to less work than noted in the opinion of Loraine Glaser, M.D., a physician who offered an opinion in Plaintiff's prior application, which formed the basis of his RFC. Plaintiff argues that Dr. Swedberg's opinion is "new and material" evidence because he limited Plaintiff to a mild

9

to moderate amount of sitting, walking, and standing. However, the ALJ specifically found that Dr. Swedberg's opinion did "not provide a specific level of exertion." (Tr. 34). Dr. Swedberg stated that Plaintiff could perform a mild to moderate amount of sitting, walking and standing. (Tr. 517). The exact amount of these activities is not clear from Dr. Swedberg's statement.[3] Given the normal findings on examination, it was reasonable for the ALJ to interpret Dr. Swedberg's opinion as consistent with Plaintiff's RFC. In fact, Dr. Neiger, who reviewed Dr. Swedberg's opinion, found it consistent with Plaintiff's previous RFC. (Tr. 298). Dr. Neiger noted that the findings between Dr. Swedberg's exam and the opinion of Dr. Galser, which Plaintiff now references, were "nearly identical." (*Id*.) This evidence supports a finding that Dr. Swedberg's opinion was consistent with the ALJ's RFC finding.

Additionally, Plaintiff's treatment records did not reflect overt symptoms associated with hepatitis C. (Tr. 31, 671). For example, in August 2012, Plaintiff complained of a painful abdomen, but the ALJ noted Plaintiff's blood work was consistent with normal liver functioning. (Tr. 31, 689, 695). Plaintiff went to the emergency room in September 2012 complaining of abdominal pain, but the nurse noted that he did not request pain medication, watched television, visited pleasantly with the nurse, and frequently asked for a boxed lunch. (Tr. 31, 682). On examination, Plaintiff reported some back tenderness but his musculoskeletal examination was normal and he

---

[3] Plaintiff argues that Dr. Swedberg's findings limit him to light work. However, the Court fails to find any such specific findings.

had no neurological deficits.  (Tr. 683-84).  The ALJ also noted that subsequent treatment

records described Plaintiff as well developed, well nourished, and in no distress.  (Tr. 31,

712, 714, 716, 718).  Plaintiff's musculoskeletal system had normal range of motion, no

tenderness and no neurological abnormalities.  (Tr. 714, 718).  The ALJ explained that

the treatment records failed to document significant abnormalities or aggressive treatment

that required the care of a specialist or emergency physician.  (Tr. 31).  Therefore,

Plaintiff's conservative medical history supports the ALJ's RFC.  *Villarreal v. Sec'y of

Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (the ALJ reasonably relied on

Plaintiff's "conservative treatment" in assessing credibility).

Plaintiff argues that the ALJ did not properly consider the opinion of Dr. Kent

Robinson, Plaintiff's treating physician.  The ALJ noted that Dr. Robinson opined that

Plaintiff had extreme limitations including the inability to sit, stand, and walk for more

than two hours a day or ten minutes at a time and extreme environmental limitations,

among other limits.  (Tr. 34, 708-11).  The ALJ considered Dr. Robinson's opinion, but

declined to give it controlling weight because Dr. Robinson did not present relevant

evidence to support his findings.  (Tr. 34).  The ALJ explained that the only objective

findings Dr. Robinson cited was "lumbar arthritis," which did not explain the extreme

postural and environmental limitations.  (Tr. 34, 708-11).  Additionally, the ALJ noted

that Dr. Robinson's limitation against environmental irritants had no connection to his

"lone clinical finding of a back condition."  (Tr. 34, 710).  The ALJ also noted that Dr. Robinson's opinion was inconsistent with his own treatment notes, which described Plaintiff as "physically active."  (Tr. 34).  The ALJ explained that Dr. Robinson opined that Plaintiff's limitations began in 2008, even though he did not start treating Plaintiff until 2013.  (Tr. 34, 711, 722).  Accordingly, the ALJ properly concluded that the opinion was not entitled to controlling weight.

After declining to give the opinion controlling weight, the ALJ noted that Dr. Robinson's opinion was only entitled to a little weight because it was inconsistent with the record as a whole and not well supported.  (Tr. 34).  The ALJ also noted that Dr. Robinson was not a specialist in the field and had only examined Plaintiff on six occasions.  (Tr. 34).  Accordingly, the ALJ provided good reasons for giving Dr. Robinson's opinion little weight.

### 2.    *Mental Impairments*

State agency psychological experts Leslie Rudy, Ph.D and Karla Voyten, Ph.D independently reviewed Plaintiff's file in November 2011 and January 2012.  (Tr. 143, 159).  After reviewing the updated records, both Dr. Rudy and Dr. Voyten affirmed Plaintiff's RFC from the prior ALJ's decision, which became Plaintiff's RFC in the current claim.  (Tr. 143, 159).  The ALJ found the opinions well-supported and consistent with the record, so he gave them great weight.  (Tr. 34).

Plaintiff argues that the ALJ failed to include Drs. Rudy and Voyten's limitations, noting "moderate" deficiencies in persistence or pace in his RFC.  However, the ALJ

noted that Plaintiff's

> only area of limitation is his ability to maintain concentration, persistence, and pace, but it is only moderately limited.  Nevertheless, [Plaintiff] is limited to unskilled work activity where he is required to make only simple work-related decisions.  Also, his job should not require more than ordinary and routine changes in the work setting or duties.  These restrictions preclude more detailed and completed tasks and ensure that [Plaintiff] is able to maintain concentration, persistence, and pace.  They also accommodate any reduced stress tolerance [Plaintiff] might experience due to his impairments.

(Tr. 33).  Accordingly, the ALJ fully accounted for Plaintiff's moderate limitations in concentration by limiting him to work that only required short and simple instructions, simple work-related decisions, and no more than ordinary and routine changes in work setting or duties.  (Tr. 29).  Moreover, even though Drs. Rudy and Voyten found Plaintiff had moderate limitations in concentration, persistence, or pace, they still opined that Plaintiff could perform work consistent with his RFC.  (Tr. 143, 159).

The ALJ also evaluated the opinion of consultative psychologist Nancy Schmidtgoessling, Ph.D, who examined Plaintiff at the request of the state agency.  (Tr. 34).  Plaintiff told Dr. Schmidtgoessling that he "can't concentrate on what I am doing" and "can't remember stuff."  (Tr. 506).  During the examination Plaintiff claimed to have various problems, but Dr. Schmidtgoessling noted, "that he then could not apply [the alleged problems] to himself and his reports were vague."  (Tr. 510).  Dr. Schmidtgoessling stated that Plaintiff's motivation and participation appeared adequate but "he had limited effort and persistence in mental status testing."  (*Id*.)  Plaintiff claimed to have severe depression, but Dr. Schmidtgoessling noted that he did not show

13

signs of depression. (Tr. 510). Dr. Schmidtgoessling found Plaintiff's effort was limited and as a result it was difficult to estimate his abilities. (Tr. 511).[4] Dr. Schmidtgoessling did not offer a RFC, so the ALJ concluded that her medical source statement was only entitled to some weight. (Tr. 34). The ALJ explained that Dr. Schmidtgoessling provided "somewhat vague conclusions" but noted that there was nothing in her clinical evaluation, GAF assignment, or work-related assessment that was inconsistent with Plaintiff's RFC.

Plaintiff also alleges that the ALJ erred because he gave less weight to the opinions of Brenda McKinstry, a certified nurse practitioner, and Leann Knox, a case manager. In June 2012, Ms. McKinstry completed a medical source statement where she indicated that Plaintiff was unable to meet competitive standards in all functional areas. (Tr. 701-02). She also stated that Plaintiff had extreme limitations maintaining social functioning, and concentration, persistence or pace and four or more episodes of decompensation within a twelve-month period. (Tr. 703). Ms. Knox testified at the administrative hearing on Plaintiff's behalf. (Tr. 76-88). She said that Plaintiff was not able to function independently in the community without the intense support of her organization and the support of his daughter. (Tr. 88). The ALJ considered Ms. McKinstry's opinion and Ms. Knox's testimony and properly concluded that they were

---

[4] Plaintiff argues that the ALJ should have included a limitation because Dr. Schmidtgoessling found that he worked at a slow pace. However, Dr. Schmidtgoessling found that Plaintiff failed to put forth the appropriate level of effort in the examination.

only entitled to little weight because Ms. McKinstry and Ms. Knox were unacceptable medical sources and their opinions were not supported by the record including their own treatment notes. (Tr. 34-35). As unacceptable medical sources, their opinions were not entitled to any special weight or consideration. *See* 20 C.F.R. §§ 416.913(a), (d)(1), 416.927.

The ALJ explained that Ms. McKinstry's proposed limitations were not supported by her own treatment notes because her mental status examinations failed to documents significant abnormalities. (Tr. 615, 621, 626, 630, 642). In particular, Ms. McKinstry generally noted that Plaintiff's thought process was clear and organized or clear and understandable. (Tr. 523-28). She also noted that Plaintiff denied delusions and had intact and appropriate insight and judgment. (Tr. 523, 528). Although Ms. McKinstry opined that Plaintiff had disabling limitations (Tr. 701-02), her examinations routinely documented a symptom severity of less than moderate. (Tr. 542, 550, 553). More importantly, although Ms. McKinstry noted that Plaintiff experienced four or more episodes of decompensation each of at least two weeks (Tr. 703), there is no evidence that Plaintiff required hospitalizations.

The ALJ also concluded that Ms. Knox's testimony was entitled to little weight. (Tr. 34). The ALJ explained that Ms. Knox's testimony primarily relied upon Plaintiff's subjective complaints, which the ALJ noted were less than credible. (Tr. 35). Although she testified that Plaintiff could not function on his own without the support of her organization, her treatment records do not indicate significant abnormalities. (Tr. 604-

15

605).  In fact, Plaintiff was often described as having a normal appearance and noted to be cooperative and talkative.  (Tr. 606, 611).  Ms. Knox's treatment records were inconsistent with the testimony regarding Plaintiff's functional limitations; therefore the ALJ properly concluded that her opinion was only entitled to little weight.  (Tr. 35).

Accordingly, the ALJ properly weighed the medical source opinions.

## C.

Next, Plaintiff maintains that the ALJ improperly concluded that he was not credible.

The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  A court may not disturb the ALJ's credibility determination absent compelling reason.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The ALJ explained that the objective medical evidence did not support Plaintiff's allegations of disabling symptoms.  The ALJ noted that Plaintiff's severe impairment, hepatitis C, did not produce any of the symptoms typically associated with a disabling condition such as fatigue, weight loss, abdominal pain, nausea, or vomiting.  (Tr. 31).  While Plaintiff reported abdominal pain in March 2011, the ALJ noted that this pain was related to acute gastritis, not hepatitis C.  (Tr. 31, 482, 484).  On exam, Plaintiff had no abnormalities and he was discharged in good condition.  (Tr. 482-84).  The ALJ noted similar findings for Plaintiff's back impairment.  (Tr. 31).  In September 2011, Plaintiff

told Dr. Swedberg that he did not see any physicians or take any medications, including over-the-counter medicine for his back condition. (Tr. 31, 515). Accordingly, it was reasonable for the ALJ to conclude that this evidence was inconsistent with Plaintiff's claims of disabling limitations. 20 C.F.R. § 416.929(c).

The ALJ also noted that Plaintiff's daily activities, malingering during Dr. Schmidtgoessling's exam, and inconsistent statements undermined his claims of disabling limitations. (Tr. 30-34). In so doing, the ALJ properly applied the regulations and caselaw in evaluating Plaintiff's subjective complaints. 20 C.F.R. § 416.929. At the consultative examination, Plaintiff told Dr. Swedberg that he could not sit for more than five minutes, however Plaintiff later admitted at the hearing that he had no limitations sitting. (Tr. 31, 59, 515). Plaintiff also testified that he could not "do too much of anything;" however his medical records reveal that he mowed the lawn and was "physically active." (Tr. 31, 61, 66-68, 392, 722). This evidence supports the ALJ's credibility analysis.

The ALJ's reliance on Plaintiff's activities was used to simply discredit Plaintiff's asserted limitations – finding Plaintiff was not as limited as he claimed. 20 C.F.R. § 416.929(c)(3) ("Factors relevant to your symptoms…which we will consider include: (1) Your daily activities…"). The ALJ did not rely on this evidence to prove Plaintiff was not disabled – but to find Plaintiff had a greater capacity that what was alleged.

The ALJ further found that Plaintiff's conservative treatment history and lack of objective findings undermined his claims of disabling mental limitations. (Tr. 31-33).

17

Although Plaintiff received treatment at the Central Community Health Board, his progress notes reflected a benign condition and his examiners frequently noted that his condition was less than moderate.  (Tr. 31-32, 523-54).  There was also a gap in Plaintiff's mental health treatment from August 2010 until September 2011, which further supports the ALJ's RFC finding.  (Tr. 32, 534-35).  When Plaintiff returned for treatment, he complained of increased symptoms; however, he noted that the symptoms were precipitated by various stressors including the death of his mother, an inability to pay rent, and the denial of Social Security benefits.  (Tr. 456).  Despite Plaintiff's complaints, he was pleasant and cooperative during the examination and described as well groomed and engaged.  (Tr. 457).  Plaintiff was assessed with only a moderate condition.  (Tr. 458).  Examinations in October 2011 and January 2012 show similar findings.  (Tr. 523, 528).  Although Plaintiff complained of disabling symptoms, his treatment remained conservative and his examinations failed to note significant abnormalities.  (Tr. 32, 523-89, 600-65).

Accordingly, the ALJ's credibility finding is supported by substantial evidence.

### D.

Finally, Plaintiff alleges that the ALJ improperly relied on the vocational expert's ("VE") testimony.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work.  (Tr. 35).  The ALJ, therefore, had to determine if Plaintiff could perform other work that existed in significant numbers in the national economy.  *See* 20

C.F.R. § 416.920(a)(4)(v), (g). The ALJ utilized the framework on the Medical-Vocational Guidelines and the testimony of the VE to determine that a significant number of jobs existed in the national economy that Plaintiff could perform. (Tr. 35-37). In response to the ALJ's hypothetical question, which encompassed Plaintiff's vocational characteristics and RFC, the VE identified a job that Plaintiff could perform. (Tr. 90-93). Therefore, the ALJ properly relied on the VE's testimony to find that Plaintiff could perform other work.

Plaintiff argues that the ALJ's hypothetical question to the VE was incomplete because he did not include all of the limitations that were supported by the record. Specifically, Plaintiff argues that the ALJ failed to include limitations for his difficulties maintaining persistence or pace; and the limitations noted in Dr. Robinson's opinion. The ALJ included all of the limitations in the hypothetical question that were supported by the record. Accordingly, the ALJ properly relied on the VE's testimony. *See also Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth eth plaintiff's physical and mental impairments.").

Plaintiff also asserts that the ALJ should have included a limitation in his hypothetical question to account for his difficulties reaching. However, while the ALJ considered Plaintiff's alleged reaching limitations, he determined that they did not cause more than minimal limitations on his ability to work. (Tr. 27). The ALJ acknowledged

19

that Plaintiff had a shoulder impingement in June 2009. (Tr. 27, 433-35, 438). However, the ALJ explained that the condition quickly improved and Plaintiff's diagnostic imagining was negative. (Tr. 27, 433-35, 438). The ALJ further noted that while Plaintiff had right shoulder tenderness in August 2012, the discomfort was related to a strain, not a severe condition. (Tr. 27, 690). With the exception of those records, the ALJ noted that Plaintiff's medical records did not reflect any treatment for his shoulder. (Tr. 27). Therefore, the ALJ properly found that Plaintiff had no limitations relating to his shoulder.

Plaintiff also contends that the VE's testimony that he could perform the packager job was inconsistent with the DOT, because the packager job has a specific vocational preparation (SVP) of 2, which involved detailed instructions, and therefore is inconsistent with a job that only has one to two step duties. However, there was no conflict between the VE's testimony and the DOT. SSR 00-4p states that "unskilled work corresponds to an SVP of 1-2." SSR 00-4p. SSR 83-10 clarifies that "[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." SSR 83-10. Since the packager job is unskilled and has a SVP of 2, it is consistent with the ALJ's RFC which limits Plaintiff to jobs that only require short, simple instructions and simple work-related decisions. (Tr. 29). Although the DOT description indicates that the packing job has a reasoning level 2, which requires detailed instructions, it specifically notes that the individual is to "[a]pply commonsense understanding to carry out detailed but involved written or oral instructions." DOT; 920-

20

587-018.  The ALJ's RFC, which limits Plaintiff to jobs that only require short, simple instructions and simple work-related decisions (i.e. unskilled work) (Tr. 29), is not invalidated because the job description contains the word "detailed."  This is especially true since the description notes that the instructions would be uninvolved and would only require commonsense understanding.  DOT; 920-587-018.[5]

Accordingly, the ALJ properly relied on the VE's testimony.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing.  The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Ronald Wise was not entitled to supplemental security income, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**.

The Clerk shall enter judgment accordingly, whereupon, as no further matters remain pending for the Court's review, this case is **CLOSED**.

Date:  5/8/15                       *s/ Timothy S. Black*
                                  Timothy S. Black
                                  United States District Judge

---

[5]  In fact, Plaintiff' did not identify the purported conflict with the DOT.  *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-169 (6th Cir. 2009) ("[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p.  This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief.").